IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| AADGRESHA EARLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-CV-1050-WKW |
| | ) | |
| CONVERGENT OUTSOURCING, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Aadgresha Earle, a former customer service representative for Defendant Convergent Outsourcing, Inc., brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, on behalf of herself and all others similarly situated. Alleging that Convergent violated the FLSA's mandatory overtime and minimum wage provisions, Ms. Earle moves the court to conditionally certify this case as a collective action under the FLSA and to facilitate notice to current and former employees of Convergent. (Doc. # 21.) Her motion has been extensively briefed. (Docs. # 22, 23, 30, 31, 33, 34, 35.) After considering the parties' arguments, the relevant law, and the evidence, the court finds that Plaintiff's motion is due to be GRANTED.

# I. JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). Venue and personal jurisdiction are uncontested.

# II. BACKGROUND

Defendant Convergent operates call centers in Montgomery, Alabama, Atlanta, Georgia, and Augusta, Georgia. Ms. Earle and more than 6,000 other individuals work or have worked during the last three years for Convergent as Consumer Service Representatives ("CSRs"). As a CSR, Ms. Earle operated phones for Convergent both from her home and in Convergent's Montgomery office. In either setting, Convergent calculated her hours worked the same way. Convergent manages its employees' time records by requiring employees to log in their hours in an electronic time-keeping system, KRONOS. In conjunction, Convergent uses a time management system, Acuity, to determine a CSR's pay rate at one of three classifications based on various factors including attendance, customer satisfaction, and employee productivity. An "A" classification pays $10.20 per hour; "B" pays $8.50 per hour; and "C" pays $7.25 per hour, or minimum wage. Depending on an employee's performance, his or her pay rate can vary from one pay period to the next.

According to Ms. Earle, she and other CSRs worked for Convergent without pay in small increments of time, both before and after their shifts, as they loaded and shut down numerous computer programs necessary for the performance of their paid work (*i.e.*, operating Convergent's phones).   Additionally, when employees had to be away from their work stations for longer than thirty minutes, including times spent taking mandatory meal breaks, Convergent required CSRs to clock out and log out of their computer systems for the break, and then to log back in and clock back in upon their return.   At the beginning of each work day and after each break, Ms. Earle had to spend about fifteen minutes booting up her computer programs; each time Ms. Earle shut down her computer required another five minutes.   These repeated tasks for which Convergent did not compensate its CSRs are at the heart of this suit.

On the basis of these facts, Ms. Earle alleges that Convergent has willfully violated the Fair Labor Standards Act ("FLSA") by (1) denying her overtime pay of 1.5 times her regular hourly pay for time worked in excess of forty hours a week, and (2) failing to pay minimum wage on any week in which she worked fewer than forty hours while classified in the "C" category.   She seeks, among other relief, monetary damages.

Ms. Earle's motion for conditional class certification requests an order:  (1) allowing this case to proceed as a collective action; (2) authorizing notice to all Alabama and Georgia CSRs who worked for Convergent within the three years preceding Earle's filing of this action;[1] and (3) directing Convergent to facilitate class notification by producing a list of the current or last known addresses and telephone numbers of Convergent's current and former CSRs.  (Doc. # 21 at 1–2.) Ms. Earle has submitted with her motion proposed notice and consent documents for the court's approval.  (Docs. # 21-1 and 21-2.)  With permission, Ms. Earle has also filed notices demonstrating that fourteen individuals have consented to opt-in to this case as plaintiffs.  (Docs. # 27, 37, 38.)  Convergent opposes conditional class certification (Doc. # 31), but, assuming that conditional certification is granted, Convergent objects to Ms. Earle's proposed notice and consent documents as submitted, (Doc. # 30).

## III.  DISCUSSION

### A.  <u>The Standard for Granting § 216(b) Conditional Class Certification and Notice</u>

Section 216(b) of the FLSA empowers employee-plaintiffs to sue their employers for violations of the FLSA.  Employees may bring suit for willful

---

[1] Ms. Earle's motion and notice, as submitted, address "all hourly employees" of Convergent, but Ms. Earle agrees that notice to a more defined group (*i.e.*, all CSRs) is proper. (Doc. # 33 at 3.)

4

violations of the FLSA "within three years after the cause of action accrued."  28 U.S.C. § 255(a).[2]  They may sue not only on behalf of themselves but also on behalf of "other employees similarly situated."  *Id*. at § 216(b).  Consequently, "to maintain a collective action under the FLSA, [named] plaintiffs must demonstrate that they are similarly situated" to putative class members.  *Morgan v. Family Dollar Stores, Inc*., 551 F.3d 1233, 1258 (11th Cir. 2008).  Additionally, the FLSA requires putative class member plaintiffs to "affirmatively opt into" litigation.  *Id.* (citing § 216(b)).

The FLSA does not provide a specific method for opting in, but the Supreme Court has recognized that district courts have discretion to implement the provisions of § 216(b).  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–170 (1989).  The Eleventh Circuit has suggested that district courts adopt a two-tiered approach to certification of § 216(b) opt-in classes.  *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).[3]  The first tier is the "notice" or "conditional certification" stage, during which a district court determines

---

[2]  On an ultimate issue of Convergent's liability, Ms. Earle and opt-in plaintiffs maintain the burden of showing a willful violation of the FLSA that triggers a three-year, rather than two-year, statute of limitations period.

[3]  Notably, some relevant cases, like *Hoffman-La Roche* and *Hipp*, involve claims of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA").  The ADEA incorporates § 216(b)'s collective action opt-in mechanism.  29 U.S.C. § 626(b).

5

whether to notify other similarly situated employees of a suit. *Morgan,* 551 F.3d at 1260–61. The court is presently at this first tier determination.

At the first tier, Ms. Earle must demonstrate that (1) there are other employees who wish to opt in to the litigation, and (2) the opt-in plaintiffs are similarly situated to her with respect to, at minimum, their job requirements and pay provisions. *Dybach v. Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991). Ms. Earle must show that there is a "'reasonable basis' for h[er] claim that there are other similarly situated employees." *Morgan,* 551 F.3d at 1260. The Circuit has described Ms. Earle's burden as light, "not particularly stringent," "fairly lenient," and "flexible," *id.* at 1260-61 (alteration omitted), because plaintiffs need only demonstrate similarity, not identicality, *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). Ms. Earle can meet her burden by proffering "detailed allegations supported by affidavits that successfully engage defendants' affidavits to the contrary." *Id.* at 1097 (quotations omitted); *see also Morgan*, 551 F.3d at 1262 n.41 ("Sometimes only limited information is available at the [conditional certification and] notice stage and detailed pleadings and affidavits may suffice."); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7B Federal Practice and Procedure § 1807 (3d ed. 1998) ("Conditional certification must be based on allegations showing common facts among the

6

parties' claims, or showing that that there is a common policy of discrimination that affects all the collective members.").

The second tier usually occurs after the completion of discovery when an employer files a motion for decertification.  *Hipp*, 252 F.3d at 1218.  At this stage, the court must "make a more informed factual determination of similarity," and "the plaintiff bears a heavier burden."  *Morgan*, 551 F.3d at 1261 (internal citation omitted).

Although courts have denied conditional certification because of a plaintiff's failure to meet "preliminary proof requirements, more commonly it is granted and notice issues at this first certification stage."  Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7B Federal Practice and Procedure § 1807 (3d ed. 1998).  Ultimately, the decision to certify a class "remains soundly within the discretion of the district court."  *Hipp*, 252 F.3d at 1219.

## B.   **The Parties' Arguments**

### 1.   *Ms. Earle's Demonstration of Similarity*

Ms. Earle alleges that Convergent's policies required its CSRs to work off-the-clock each day as the CSRs set up and shut down their computer workstations. She has submitted emails, instant message histories, official policy documents, and other documents from supervisors – addressed to both individual employees and

large groups of employees – directing employees to have their computer programs up and running fifteen minutes prior to the start of their shifts, so as to be ready to operate phones at the start of the shifts.  These documents reveal that at least some Convergent supervisors expected employees not to log into KRONOS (and consequently, not be paid for time) until their computer systems were up and running.  (*See, e.g.*, Doc. # 23-1 at 2 ("Please try to access (<u>NOT CLOCK IN TO</u>) Kronos at least 15 minutes before your shift begins to ensure that you are ready to [make and receive calls] when your shift starts.  This should apply to all of your [computer] programs . . . so that if there is a problem, you have time to notify your Supervisor and resolve the issue before your shift starts."); Doc. # 23-3 at 1 ("[Y]our [A]vaya (the program used to access the phone system) should always match your Kronos."); Doc. # 23-3 at 2 ("[I]t took you 13 min[ute]s yesterday to pull up your system after log[ging ]in Kronos.  [T]hat's not acceptable[;] that's like stealing time.").)[4]  Ms. Earle's evidence identifies numerous Montgomery and Atlanta supervisors, trainers, and other managers who communicated these expectations.  (Docs. # 35-2, 35-3, 35-4, 35-5, 35-6, 35-7.)

---

[4] Documents also show that some supervisors expected employees not to log off KRONOS for ten to fifteen minutes every time their computer systems were repaired for technical problems. (*See* Docs. # 23-4 at 2, 23-5 at 2–3.)  But Earle's complaint does not allege that she worked without pay while computer system problems were resolved.

Moreover, Ms. Earle has filed notices demonstrating that fourteen current and former Convergent CSRs have consented to opt in to this litigation as plaintiffs.[5] (Docs. # 27, 37, 38.) Ms. Earle has offered her own written declaration and ten additional declarations from potential opt-in plaintiffs.[6] The declarations reflect that potential opt-in plaintiffs are similar to Ms. Earle in that (1) they are present or former CSRs for Convergent; (2) they are or were paid by the hour and classified as non-exempt employees; and (3) at their supervisors' directions, they worked without pay for ten to fifteen minutes each time they logged into and out of their computer programs, both before and after work and after mandatory breaks. The declarants differ from Ms. Earle in that not all of them worked from home. Two or three worked in Georgia rather than in Alabama, and only Craig Hubbard represented that he used precisely the same computer programs identified by Ms. Earle in her complaint.

But Ms. Earle claims that regardless of other CSRs' varying locations (*i.e.*, in a Convergent office or at home, in Alabama or in Georgia), they all performed

---

[5] The consenting opt-in plaintiffs are Jyra Anderson, Catrinna Barber, Bernice M. Bedell, Jermeica Carter, Craig B. Hubbard, Demetrice Jackson, Robert J. Marsh, Jenna Matol, Rhonda Nichols, Beverly Overstreet, Keith Parquette, Parnell Pitts, Troy E. Williams, and Dorothy Wrona.

[6] The record contains one or more declarations from: (1) Aadgresha Earle; (2) Rhonda Nichols; (3) Keith Parquette; (4) Dorothy Wrona; (5) Beverly Overstreet; (6) Jyra Anderson; (7) Jermecia Carter; (8) Catrinna Barber; (9) Craig Hubbard; (10) Parnell Pitts; and (11) Robert Marsh.

9

similar job duties, held the same job titles, abided by the same time-keeping procedures and policies, and thus, were all underpaid in violation of the FLSA. Accordingly, Ms. Earle argues that she and other CSRs are similarly situated, and to the extent that their experiences differ, the variations are minimal and not a hindrance to conditional class certification.

### 2.    Convergent's Opposition to Conditional Certification

Convergent argues that Ms. Earle's lawsuit is inappropriate for conditional class certification.  (Doc. # 31.)  Convergent asserts that it employed 6,127 CSRs in Alabama and Georgia during the last three years, and that each of these CSRs has had a varying experience, depending on his or her environment (that is, working from home or in the office),[7] assigned supervisor(s),  personal work habits, and assigned accounts.  More specifically, Convergent contends that Ms. Earle's claims involved the use of specific computer programs (AVAYA, VPN, CITRIX, Memo Generator, Icare), which are peculiar to her experience as an employee who worked from home and exclusively on Convergent's Sprint account.  And because Convergent has collected declarations from sixty-five current employees who dispute having experiences similar to Ms. Earle, Convergent posits that this evidence proves the non-existence of a company-wide

---

[7] Convergent notes that some CSRs who worked from home have reported having slower computers and less reliable internet connections.

policy to violate the FLSA.   Rather, only a few rogue supervisors miscommunicated the proper methods for recording hours worked.   Hence, Convergent argues that adjudication as a collective action is not appropriate in light of the widely divergent experiences of Ms. Earle, the consenting opt-in plaintiffs, and other yet-to-be identified collective action members.

## C.   **The Court's Conclusions**

### 1.   *Conditional Certification*

Ms. Earle has shown a "reasonable basis" to believe that there are other similarly situated plaintiffs who should be notified of Ms. Earle's FLSA action against Convergent.  *See Morgan*, 551 F.3d at 1260.  The individuals whom Ms. Earle seeks to notify of this litigation have in common with Ms. Earle at least three job characteristics: (1) job title, CSR; (2) non-exempt pay status as an hourly employee; and (3) general job functions and duties.   Convergent also has not disputed that, like Ms. Earle's, all CSRs' time records were kept via KRONOS, and all CSRs' weekly pay rates were measured via Acuity.   Furthermore, Ms. Earle's evidentiary submissions demonstrate that more than one Convergent supervisor instructed more than the fourteen current opt-in plaintiffs not to record in KRONOS their daily time spent setting up and shutting down computer software.  Ms. Earle submitted declarations showing that CSRs, working in both

Montgomery and Atlanta shared Ms. Earle's experiences, regardless of whether they worked at home or in an office setting. And finally, the notice of fourteen consenting opt-in plaintiffs is sufficient to show that others wish to join this litigation. *Dybach*, 942 F.2d at 1567–68. Convergent disputes the significance of Ms. Earle's evidence that additional persons wish to join this litigation by contending, in essence, that its sixty-five declarations of current employees denying Ms. Earle's allegations outnumber the eleven declarations supporting Ms. Earle's alleged FLSA violations. Although Convergent's current employees' declarations contradict Ms. Earle's allegations, those declarations do not negate the fact there are other similarly situated employees wishing to opt-in.

To the extent that Convergent argues, among other things, that not every CSR has worked on the same account, answered to the same supervisors, used the same or as many software programs Ms. Earle used, enjoyed the same computer speed or internet connectivity, or managed her time well, these arguments demand too stringent a showing for the first tier. The Eleventh Circuit standard requires similarity – not identicality. *Grayson*, 79 F.3d at 1096.

Convergent also argues that certification will complicate the calculation of damages for participating plaintiffs, because Convergent computed each CSR's pay differently and on the basis of seniority, location, and Acuity's "A," "B," and

"C" pay scale classifications, which may vary for each CSR from one pay period to the next.  Convergent points to the declarations of sixty-five of its employees who all dispute Ms. Earle and the consenting opt-in plaintiffs' characterization of a ten to fifteen minute time frame for uploading computer programs.  Several declarants represent that the amount of time to prepare their computers for work is negligible.  On the basis of this evidence, Convergent speculates that plaintiffs joining a collective action will not uniformly report that they worked the same amount of unpaid time that Ms. Earle claims to have worked each day.  Consequently, Convergent argues that certification as a collective action will complicate the computation of widely divergent claims for damages.  In support of its argument, Convergent cites *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013), where the court affirmed a district court's decertification of a class certified as both a Rule 23 class and an FLSA collective action.  But a decertification case is not instructive at the conditional certification stage.  A damages-computation argument may be appropriate later in this litigation if "more legally significant differences appear amongst the opt-ins."  *Morgan*, 551 F.3d at 1261.  But for now, *possible* differences are no bar to conditional certification.

For these reasons, Ms. Earle's motion for conditional certification is due to be granted.

## 2.     *Ms. Earle's Proposed Notice and Consent Documents*

Convergent asks the court to revise Ms. Earle's (1) proposed notice to putative class members and (2) proposed form for obtaining the consent of individuals wishing to join this suit.   (Doc. # 30.)   Ms. Earle has replied to Convergent's objections.   (Doc. # 33.)   The parties are at an apparent impasse on several issues.   There are also other notice-related matters, not raised, requiring resolution.

There is no binding statutory or case law defining what a collective action notice under § 216(b) must include or how involved the court must be in effecting notice.   *See Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 421 (M.D. Ala. 1991) (Thompson, J.).   But district courts have "discretion" to put § 216(b) into action "by facilitating notice to potential plaintiffs."   *Hoffman-La Roche*, 493 U.S. at 170–71 ("confirm[ing] the existence of [a] trial court's discretion," but "not the details of its exercise").   In *Hoffman-La Roche*, the Supreme Court remarked that a district court should be involved early, "at the point of the initial notice, rather than at some later time," *id.* at 171, to "ensure that [the notice] is timely, accurate, and informative," *id.* at 172.   In the exercise of its discretion, the court should screen the proposed notice to prevent potential plaintiffs from receiving

information which is "factually inaccurate, unbalanced, or misleading." *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1344 (N.D. Ga. 2007).

With these principles in mind, the court resolves the following issues.

### a. Inclusion of the Court's Name

The Supreme Court has expressly cautioned that a district court "must be scrupulous to respect judicial neutrality" and "avoid even the appearance of judicial endorsement of the action" when issuing notice to potential plaintiffs. *Hoffman-La Roche*, 493 U.S. at 174.   Citing cases from the Seventh Circuit, Convergent objects to the placement of the court's name at the top of page one of the notice, arguing that its inclusion gives recipients the impression that the court endorses Ms. Earle's suit.  In this district, however, it is customary that a notice be styled with the court's name as the heading.  *See, e.g.*, *McLean v. Cleaning Servs., Inc.*, No. 3:11-cv-874-MEF (M.D. Ala. June 28, 2012) (order granting motion to issue class notice and approving notice form with court's name in heading); *Todd v. Daewon Am., Inc.*, 3:11-cv-1077-MHT (M.D. Ala. Apr. 3, 2013) (same). Indeed, it is at the court's directive that the notice will be issued.  Moreover, the Notice, as drafted, provides in Section VIII that "the [c]ourt takes no position regarding the merits of Plaintiff's claims or Convergent's defenses."  (Doc. # 21-1

at 5.)   Thus, the notice, as drafted, protects against the appearance of judicial endorsement of the merits of the lawsuit.   Convergent's objection is overruled.

### b.  Scope of the Class

Convergent repeatedly objects that Ms. Earle's proposed "Notice of Right to Opt-In to Lawsuit" is addressed too broadly to "[a]ll present and former hourly paid employees of Convergent."   (*See, e.g.*, Doc. # 30 at 3, 10.)   Ms. Earle concedes that her motion and notice should be directed only to "all CSRs in Alabama and Georgia."   (Docs. # 33 at 3, 34 at 9.)   Thus, both the notice and consent documents should be modified to address Convergent's concerns.

For reasons stated in the analysis on conditional certification, Convergent's objection that the class description be limited further (*i.e.*, to only CSRs who worked at home, on the Sprint project, and under the supervision of a Convergent supervisor identified by Ms. Earle) is overruled.

### c.  Description of the Lawsuit

Convergent asks, for the sake of clarity, that this sentence in the "description of the lawsuit" section –

> Plaintiff claims that the above mentioned policies and procedures by Convergent are a violation of the Fair Labor Standards Act . . . for not paying minimum wage for such work performed off-the-clock *in weeks [employees] did not work as many as forty hours when being paid minimum wage by Convergent for the week.*

16

(Doc. # 21-1 at 2) (emphasis added) – be replaced with this revision:

> Plaintiff claims that the above mentioned policies and procedures by Convergent are a violation of the Fair Labor Standards Act . . . for not paying minimum wage for such work performed off-the-clock *in weeks in which [employees] worked under forty hours when classified in the 'C' category under the Acuity program*.

(Doc. # 30 at 5) (emphasis added).  Convergent's clarification is consistent with Ms. Earle's pleading and briefing.  (*See* Doc. # 1 at 6.)  Ms. Earle alleges that she was effectively paid less than minimum wage when she worked fewer than forty hours a week at Acuity's "C" status.  Convergent's suggested revision will be incorporated into the notice.

### d.  Explanation of Convergent's Defenses and Objections

Convergent asks for the opportunity to present its theory of the case within the notice.  This is a notice to opt-in plaintiffs who need notification of Ms. Earle's claims, not Convergent's defenses.  The notice's current provision – "Convergent denies liability in this case." – is sufficient.  *See Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 540 (N.D. Cal. 2007) ("[A] statement that defendant denies violation of the FLSA . . . is a fact that should be included in the notice to inform the potential plaintiffs.").  Convergent's objection is overruled.

### e.  The Definition of Who May Join the Suit

Ms. Earle concedes that she should revise Section III of her notice to inform recipients that they "*may* have a claim" against Convergent (emphasis added). Otherwise, Convergent's objections to the wording of Section III are overruled because Convergent's proposed revisions do not align with Ms. Earle's allegations or theory of Convergent's liability.

### f.  Advising of Potential Obligations and Liabilities

Convergent finally asks that the court require Ms. Earle to revise the notice to advise CSRs that their participation as plaintiffs may obligate them to provide discovery, give depositions, or testify in court, and that these obligations might require travel to Montgomery, Alabama.  Convergent also asks that the notice explain that if an individual becomes a plaintiff, and the plaintiffs ultimately lose, he or she could become responsible for Convergent's costs in defending the suit. Convergent's proposals are supported by case law.  *See, e.g.*, *Adams*, 242 F.R.D. at 540 (finding that a statement concerning liability if employer won suit "should be included to present to potential plaintiffs a fair statement of their rights" (quotation marks omitted)); *Halsey v. Casino One Corp*., No. 4:12CV1602 CDP, 2012 WL 6200531, at *5 (E.D. Mo. Dec. 12, 2012) (requiring, "in the interest of complete accuracy," a revision to the proposed notice to inform potential plaintiffs

18

that they "may have to pay some portion of the [defendant's] costs and expenses" if the defendant prevails); *Creten-Miller v. Westlake Hardware, Inc.*, No. 08–2351–KHV, 2009 WL 2058734, at *5 (D. Kan. July 15, 2009) (revising plaintiff's notice to inform potential plaintiffs living throughout the Midwest and Southwest, that they must travel to Kansas City to participate in suit).

Ms. Earle contends that Convergent is attempting to deter participation in the collective action.  She points out that other notices issued from this district have not included similar warnings.  *See, e.g.*, *McLean* and *Todd*, cited *supra*, Section IV.C.2.a.  Because notices approved by this district typically do not include Convergent's requested warnings, and in the exercise of the court's discretion, Convergent's objections are overruled.

Similarly, Convergent objects that Ms. Earle should modify the consent document to require opt-in plaintiffs to acknowledge that they may be responsible for Convergent's costs if the lawsuit is unsuccessful.  This objection is likewise overruled.

### g.  Other Objections

Any additional objections not expressly addressed in this opinion are overruled.

### h.  Time Period for Alleged FLSA Violations

Ms. Earle originally drafted her notice to address similarly situated Convergent employees who experienced FLSA violations "from November 30, 2009, through November 30, 2012." (Doc. # 21-1 at 1, 3.)  However, in her reply brief, she asks to modify the notice to encompass violations "from November 30, 2009[,] to the present." (Doc. # 33 at 9.)  In support of her request, she cites Judge Thompson's reasoning in an opinion entered in *Todd v. Daewon*, 3:11-cv-1077-MHT (M.D. Ala. Mar. 20, 2013).  In response to the plaintiff's similar request, Judge Thompson concluded that the inclusion of "those employees who began working for [Defendant] after the complaint . . . was filed will further the purposes of the FLSA collective action" by sparing opt-in plaintiffs "the cost and delay of initiating a separate lawsuit" and efficiently resolving all allegations at once.  *Id.* at 6.  Although the court has not directed continued briefing on this matter, Convergent has not objected to Ms. Earle's request.

Consistent with the FLSA's purposes to allow plaintiffs to pool their resources and to assist courts in the efficient resolution of common issues of law and fact, *Morgan*, 551 F.3d at 1264, Ms. Earle's request is granted, and she should revise her notice at pages 1 and 3 to address CSRs who allege that Convergent has

violated their rights under the FLSA, at any time from November 30, 2009, to the present.

### i. Cutoff Date for Receiving Consents

The proposed Notice document will require a certain date for potential plaintiffs to return their signed consent form to Plaintiffs' counsel. The court will allow Plaintiffs' counsel sixty days from the date the notice is issued to collect consents from opt-in plaintiffs. *See Hoffman-La Roche*, 493 U.S. at 172 (approving the imposition of "cutoff dates to expedite disposition of the action").

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that Ms. Earle's motion to conditionally certify and facilitate court-approved notice (Doc. # 21) is GRANTED.

Convergent's objections to Ms. Earle's proposed notice and consent documents are SUSTAINED IN PART and OVERRULED IN PART, as set out in this Opinion and Order. Ms. Earle's request, contained in her Reply (Doc. # 33), to amend the definition of the conditional collective action class to include CSRs presently working for Convergent, is GRANTED. Counsel for Ms. Earle and the opt-in plaintiffs are DIRECTED to revise the proposed "Notice of Right to Opt-in to Lawsuit" and "Consent to Become a Party Plaintiff" documents.

The parties are DIRECTED to jointly file, no later than **September 19, 2013**, the revised notice and consent documents for the court's final approval. Once the final notice and consent documents are approved, Plaintiffs' counsel will be allowed sixty days to collect consents from opt-in plaintiffs.

In order to facilitate the provision of notice, Convergent is ORDERED to provide to Ms. Earle's counsel, on or before **September 19, 2013**, a list containing the names and current or last known addresses and phone numbers of all current and former CSRs whom Convergent employed in Alabama and Georgia at any time between November 30, 2009, and the present.

DONE this 5th day of September, 2013.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE